IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSEPH CHIPPARI, et al.,                    )
                                             )
            Plaintiffs,                      )
                                             )
     v.                                      )        1:23-cv-1666 (LMB/WEF)
                                             )
BROOKFIELD WASHINGTON, LLC, et al.,          )
                                             )
            Defendants.                      )

MEMORANDUM OPINION

On April 11, 2024, defendants Brookfield Washington, LLC, et al., (collectively,

"Brookfield Residential" or "defendants") filed a "Motion to Dismiss Amended Complaint or, in

the Alternative, for Summary Judgment,"[1] [Dkt. No. 23], seeking dismissal of plaintiffs Joseph

Chippari, Martha Chippari, Charles Knaack, Jr., and Zayra Knaack's (collectively, "plaintiffs")

Amended Complaint, brought on behalf of themselves individually and on behalf of all owners

and consumers who purchased new residential homes from defendants.  The Amended

Complaint alleges that these homes were defectively constructed and sold by entities that did not

possess valid contractor licenses, in violation of the Virginia Consumer Protection Act, Va. Code

§ 59.1-196, et seq., and other state law.  In their Motion to Dismiss, defendants raise multiple

arguments, including that plaintiffs' claims do not satisfy the jurisdictional requirements for a

diversity suit and are time-barred under the express language in the sale agreements and

Virginia's statute of limitations.  In opposition, plaintiffs maintain that they have plausibly

---

[1] Because discovery has not yet started, defendants' motion for summary judgment is premature.
See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002)
("Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not
had the opportunity to discover information that is essential to his opposition.'").  Accordingly,
the Court will construe defendants' request only as a motion to dismiss.

alleged diversity of citizenship and an amount in controversy that exceeds $75,000 pursuant to 18 U.S.C. § 1332(a), and that their claims are not time-barred.

Oral argument has been held, during which the Court denied class action certification given the lack of commonality among the class members' sale agreements with defendants, some of which were entered into over 22 years ago, and took the Motion to Dismiss under advisement.[2]  Having fully considered the parties' oral arguments and memoranda, for the reasons that follow, the Motion to Dismiss will be granted as to all counts except for Count VI, which will go forward.[3]

I

**A.  <u>Factual Background</u>**

1. Sale Agreements

This case involves plaintiffs' purchases of residential homes in Virginia from Brookfield Residential in 2017 and 2020.  The Amended Complaint alleges that the Chipparis purchased their single-family home on October 6, 2017,[4] through an agreement listing defendant Brookfield Washington, LLC ("Brookfield Washington") as "Seller" and defendant Brookfield Management Washington, LLC ("Brookfield Management") as "Builder or Manager." [Dkt. No. 14] at ¶ 73; [Dkt. No. 24-1] Ex. A at ¶ 23. The Knaacks purchased their single-family home on January 21,

---

[2] Because the Court has denied class action certification, this Memorandum Opinion will only refer to facts and claims involving the named plaintiffs.

[3] Defendants have also filed a Motion for Sanctions in which they seek monetary sanctions, non-monetary directives, and reasonable expenses due to plaintiffs filing a "zero merit" lawsuit. [Dkt. No. 32].  Plaintiffs have filed a Motion for Leave to File a Sur-Reply.  [Dkt. No. 39]. Because the entire Amended Complaint will not be dismissed, defendants' Motion for Sanctions will be denied, and that decision renders plaintiffs' Motion for Leave to File a Sur-Reply moot.

[4] According to the Amended Complaint, the Chipparis' agreement incorrectly states the purchase occurred on September 30, 2017.  <u>See</u> [Dkt. No. 14] at ¶ 73.

2

2020, in an agreement also listing defendant Brookfield Washington as "Seller" and Brookfield Management as "Builder or Manager." [Dkt. No. 14] at ¶ 79; [Dkt. No. 24-1] Ex. B at ¶ 23. Both entities traded as "Brookfield Residential," and both agreements represented that the seller, Brookfield Washington, was a Class A licensed contractor at the time, when only Brookfield Management held a valid contractor license, as shown in the picture below. [Dkt. No. 14] at ¶¶ 77, 85.



[Dkt. No. 24-1] Ex. A.

 The Amended Complaint alleges that neither Brookfield Washington nor any other defendant notified plaintiffs that Brookfield Washington did not have a valid contractor license. Nor did any of the defendants ever inform plaintiffs that only a licensed contractor may enter into such sale agreements. [Dkt. No. 14] at ¶ 106. The sale agreements are thus "illegal and unenforceable contracts because they were signed" by a Brookfield Residential entity which falsely represented that it was the builder of the homes and that it was a licensed contractor. Id. at ¶ 1.

 Each sale agreement at issue was drafted by Brookfield Residential and contains a ten-year express builder warranty, but this warranty is with the unlicensed Brookfield Residential

entity and not with the real builder. When these contracts were signed, the real builder of the homes, and the only Virginia Class A licensed Brookfield Residential entity, was defendant Brookfield Management; however, each sale agreement includes a term which excludes Brookfield Management from all liability.[5] Id. at ¶¶ 3–4. The Amended Complaint alleges that the Brookfield Residential entities were created in an unlawful and deliberate scheme to eliminate privity of contract between the purchaser and the real builder, Brookfield Management, to negate the express warranties provided in the sale agreements. Id. at ¶ 88.

The sale agreements also provide for a one-year limitations period for the types of claims plaintiffs have brought in this civil action:

> [A]ny such claims initiated in any forum against any party to this agreement and/or their joint and several successors, members, affiliates, employees, agents, contractors and/or suppliers by any other party to this agreement and/or their successors, subrogees and assigns shall be deemed automatically barred and precluded as a matter of law and contract if not filed/initiated within that agreed one (1) year limitation of action period following settlement and before said bar date.

[Dkt. No. 24-1] Ex. A at ¶ 17; id. Ex. B at ¶ 17 (cleaned up).

2. Home Repairs

Separate from the class-related allegations which focus on misrepresentation in the sale agreements, the Chipparis and Knaacks have brought claims on behalf of themselves against Brookfield Residential for negligent repair of their homes and for breaches of contract and warranty. The Amended Complaint alleges a host of issues with the plaintiffs' homes since their purchase. Specifically, the Chipparis allege that their home has "cracked windows; the windows

---

[5] The sale agreements are poorly written. For example, the Chipparis' sale agreement lists Brookfield Washington as the "seller" or "builder"; however, elsewhere in the agreement, Brookfield Management is listed as the "builder." See [Dkt. No. 24-1] at ¶¶ 10, 23.

were of poor quality and/or design which allows for condensation to accumulate and create sweat and puddles; the windows allow cold air into the home when it is cold outside; a room above their garage does not hold in air conditioning in the summer, nor heat in the winter; and the home's foundation has issues." Id. at ¶ 141. In February 2021, when a third-party company replaced a window in the Chipparis' home, it was "discovered that the windows were devoid of foam air stoppers." Id. at ¶ 151. In March 2022, Brookfield Residential removed drywall from the garage bedroom and other rooms in the house, and sprayed insulation, allegedly incorrectly because it "was compressed into the ceiling down to 6 inches, when it was required to be 10 inches." Id. at ¶ 152. Moreover, the room above their garage remains "extremely warm compared to the rest of the house." Id. at ¶ 156. And since moving in, the Chipparis have had "consistent water drainage issues in their yards." Id. at ¶ 157. Although the Chipparis have submitted "several service requests to Brookfield Residential," Brookfield Residential "has repeatedly negligently repaired the Chippari [h]ome," and the resulting damage has "continued in the Chippari home to date." Id. at ¶ 158. The Amended Complaint further alleges that in "Spring 2022" the Chipparis first discovered that Brookfield Washington was not properly licensed as a Class A contractor. Id. at ¶ 161.

The Knaacks have had similar issues with their Brookfield Residential home, including "cracks in their foundation; issues with air conditioning and heating on the second floor; loose trusses; water leaks; improper grading; separating trim; and spongy flooring." Id. at ¶ 165. The Knaacks have submitted "several service requests" to Brookfield Residential, including many about the cracks in the foundation, but not all have been resolved. Id. at ¶ 173. The Amended Complaint alleges that in "Spring 2022" the Knaacks discovered that Brookfield Washington was not properly licensed as a Class A contractor. Id. at ¶ 175.

5

The Amended Complaint also alleges that "[u]pon information and belief," the homes have violations of the Virginia Uniform Building Code, "including but not limited to improperly sized concrete foundations (known as "footers") and missing steel reinforcement (known as "rebar") in the concrete walls of the basement." Id. at ¶ 178.

4. Statutory Background

Plaintiffs' central claim is that the Brookfield Residential entities entered into sale agreements with them by deceptively representing that the agreements were with Class A licensees in violation of the Virginia Consumer Protection Act, Va. Code § 59.1-196, et seq. ("VCPA"). Under the VCPA, it is unlawful for any supplier in connection with a consumer transaction to misrepresent goods or services as those of another; misrepresent the source, sponsorship, approval, or certification of goods or services; misrepresent that goods or services have certain quantities, characteristics, ingredients, uses or benefits; misrepresent that goods or services are of a particular standard, quality, grade, style, or model; use any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction; use in any contract or lease any liquidated damage clause that is void or unenforceable under applicable Virginia law; violate the provisions of Va. Code § 54.1-1115(B); or violate any provision of Va. Code § 54.1-111 "relating to the unlicensed practice of a profession licensed under Chapter 11." Va. Code § 59.1-200. "Any person who suffers loss as the result of a violation" of the VCPA may initiate an action to recover damages and attorney's fees, and, if the defendant is found to have willfully violated the VCPA, the plaintiff may recover "three times the actual damages sustained, or $1,000, whichever is greater." Va. Code § 59.1-204.

Notably, Va. Code § 54.1-1103(A) provides that "[n]o person shall engage in, or offer to engage in, contracting work in the Commonwealth unless he has been licensed under the provisions of this chapter." Va. Code § 54.1-111(A) similarly states that it is unlawful for any entity to "perform[] any act or function which is restricted by statute or regulation to persons holding a professional or occupational license or certification without being duly certified or licensed." Under Va. Code § 54.1-1115(B), operating without a license "constitute[s] a prohibited practice in accordance with § 59.1-200, provided that the violation involves a consumer transaction as defined in the Virginia Consumer Protection Act (§ 59.1-196 et seq.), and shall be subject to any and all of the enforcement provisions of the Virginia Consumer Protection Act"; however, a contract entered into by a person without a valid contractor's license may be enforceable if the contractor "(i) gives substantial performance within the terms of the contract in good faith and (ii) did not have actual knowledge that a license or certificate was required by this chapter to perform the work for which he seeks to recover payment." Id. at (C).

**B. Procedural History**

The first lawsuit involving Brookfield Residential's licensure began in this Court on October 25, 2021, when defendants Brookfield Washington and Brookfield Management Washington removed a state court complaint that alleged they had breached their contract with the plaintiffs by selling defective homes. See Lappat, et al. v. Brookfield Washington LLC, et al., 1:21-cv-1263 (LMB/TCB). In that case, the plaintiffs raised lack of licensure in support of their motion to dismiss defendants' breach of contract counterclaim. The Court allowed that breach of contract counterclaim to continue. [1:21-cv-1263, Dkt. No. 43]. The parties ultimately filed a stipulation of dismissal, which closed the civil action.

The Chipparis and Knaacks were among the plaintiffs who, on February 28, 2022, filed a proposed class action against defendants (which contained no individualized claims), alleging

7

that they violated the VCPA by engaging in the sale of residential homes without being licensed contractors.  Wilson, et al. v. Brookfield Washington, LLC, et al., 1:22-cv-215 (LMB/IDD). Unlike in this civil action, the Wilson complaint alleged jurisdiction under 28 U.S.C. § 1332(d). See id. ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant").  The Court declined to exercise jurisdiction over the class action and dismissed the Amended Complaint after finding a lack of commonality in the "types of problems" in the class plaintiffs' homes and finding that the allegation did not plausibly support damages exceeding $5,000,000.  See [1:22-cv-215, Dkt. No. 60].  That decision was not appealed.

The pending Amended Complaint[6] seeks declarations under Fed. R. Civ. P. 57 and  28 U.S.C. § 2201 that Brookfield Residential entered into illegal contracts by signing sale agreements in the name of entities which falsely claimed to have Virginia Class A licenses, rendering these contracts unenforceable (Count I), and that defendants Brookfield Homes Holdings, LLC, Brookfield Residential US Corporation, and Brookfield Residential US Holdings, LLC are alter egos of the Brookfield Residential entities, making them jointly and severally liable for the damages caused by the entities (Count II).  The Amended Complaint also seeks equitable relief in two alternative forms: recission of the sale agreements and an order requiring Brookfield Residential to refund and disgorge the monies paid to Brookfield Residential by each class member for his or her respective home (Count III); or rewriting of the agreements to replace the unlicensed builder with Brookfield Management, the licensed

---

[6] Plaintiffs initially filed a Complaint on December 6, 2023, to which defendants filed a motion to dismiss on February 28, 2024.  In response, plaintiffs filed the operative Amended Complaint.

Brookfield Residential entity, and to extend liability for the ten year "builder" warranties to Brookfield Management (Count IV).

The Amended Complaint also seeks treble damages and attorney's fees under the VCPA (Count V). Specifically, because the Amended Complaint alleges that Brookfield Residential deliberately and intentionally lied and defrauded the class members when it signed the sale agreements, defendants are liable to plaintiffs for at least $1,000 in statutory damages as well as for their reasonable attorney's fees and costs under the VCPA. Moreover, plaintiffs contend that each new home express warranty that defendants attempted to negate through their fraud was worth at least $30,000, which, after trebling, would result in $90,000 in damages, plus reasonable attorney's fees and costs.

Finally, the Chipparis and the Knaacks bring claims in their individual capacities against Brookfield Residential for breach of contract and breach of warranty (Count VI) and negligent home repairs (Count VII). According to the Amended Complaint, each plaintiff couple seeks damages in excess of $75,000 resulting from defendants' breaches and negligent repairs.

II

## A. Standard of Review

To dismiss a claim under Rule 12(b)(6), a court must find that a "plaintiff's allegations fail to state a claim upon which relief can be granted." Abdelhamid v. Sec'y of the Navy, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). At the motion to dismiss stage, "the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff." Sturgill v. Norfolk Southern Ry. Co., 391 F. Supp. 3d 598, 602 (E.D. Va. 2019) (internal citation omitted). To survive a Rule 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

9

Twombly, 550 U.S. 544, 570 (2007).  It also is not enough for a plaintiff simply to provide

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Id. at

555.

### A. **Jurisdiction**

#### 1. Diversity Jurisdiction

Unlike in Wilson, where plaintiffs relied on the original jurisdiction bestowed on federal

courts over class actions pursuant to 28 U.S.C. § 1332(d), plaintiffs now rely on 28 U.S.C.

§ 1332(a) to bring their claims in federal court.  To obtain diversity jurisdiction under § 1332(a),

the complaint must allege complete diversity of the parties and the matter in controversy must

exceed the sum or value of $75,000, exclusive of interests and costs.  Although defendants

concede that the named plaintiffs are diverse from all defendants, they argue that plaintiffs "still

failed to establish jurisdiction, because they only alleged a $75,000 amount in controversy in the

aggregate, and failed to show that each [p]laintiff was damaged in excess of $75,000, as is

required under 28 U.S.C. § 1332(a) and relevant case law."  [Dkt. No. 24] at 11.  In opposition,

plaintiffs argue that their claims exceed the $75,000 amount in controversy because "courts

aggregate a plaintiff's separate causes of action against the same defendant to determine whether

their sum exceeds $75,000," and "the Chipparis' aggregated claims far exceed the statutory

minimum, as do the Knaacks' aggregated claims."  [Dkt. No. 30] at 9.

The Amended Complaint, on its face, satisfies the threshold requirement under § 1332(a).

As an initial matter, "[u]nless the claim for an amount over the jurisdictional prerequisite is made

in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional

amount is all that is at issue, the district court has jurisdiction over the case."  Shanaghan v.

Cahill, 58 F.3d 106, 112 (4th Cir. 1995).  Here, the aggregation rule applies squarely to the four

named plaintiffs who request declaratory and equitable relief, as well as damages for violations

10

under the VCPA, breaches of the sale agreements and warranties, and negligent home repairs. At a minimum, the Amended Complaint plausibly alleges that the Chipparis' and the Knaacks' claims for breaches of contract and warranty as well as negligent home repair are well in excess of $75,000, exclusive of interest, fees, and costs, due to the "diminution in value and cost of repair of all construction defects and building code violations in the home." [Dkt. No. 14] at ¶ 162. Accordingly, plaintiffs have sufficiently pleaded claims that exceed the amount in controversy required by 28 U.S.C. § 1332(a).

　　2. Personal Jurisdiction

　　Defendants argue that the Court does not have personal jurisdiction over defendants Brookfield Homes Holding, LLC, Brookfield Residential US, LLC, and Brookfield Residential US Holdings, LLC because "mere LLC membership status cannot confer jurisdiction by this Court over them." [Dkt. No. 24] at 33. In opposition, plaintiffs argue that the Court has personal jurisdiction over these "parent entities" because they "exercised complete domination and control over Brookfield Washington, Brookfield Management, and the other Brookfield Seller entities, and used these entities as their alter ego to engage in the wrongful acts described in this Class Action Complaint as a single entity, referred to as Brookfield Residential." [Dkt. No. 30] at 10.

　　Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, Young v. New Haven Advoc., 315 F.3d 256, 261 (4th Cir. 2002), and federal courts have consistently held that it is compatible with due process for a court to exercise personal jurisdiction over an entity not ordinarily subject to personal jurisdiction when the entity is an alter ego of a corporation that would be subject to personal jurisdiction in that court.

11

Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433 (4th Cir. 2011) (collecting cases); see also Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 63 (4th Cir. 1993).

The Amended Complaint alleges that these parent defendants exercised complete domination and control over Brookfield Washington and Brookfield Management, and they used these entities as their alter ego to engage in the wrongful acts described in the Amended Complaint as a single entity, referred to as Brookfield Residential. [Dkt. No. 14] at ¶¶ 65–66. The Amended Complaint further alleges that defendants, acting in concert as a single entity, Brookfield Residential, marketed, constructed and sold homes in Virginia based on fraudulent misrepresentations in violation of Virginia law; "failed to abide by corporate formalities"; "abused the corporate forms in contravention of Plaintiffs' and Class Members' rights"; and that the Brookfield entities are undercapitalized sham single-purpose entities created solely to avoid liability, see id. at ¶¶ 67–69. These allegations adequately state a plausible basis for personal jurisdiction over the corporate parent defendants.

### B. Statute of Limitations

#### 1. Sale Agreement Limitations Period

Defendants argue that the sale agreements entered into by plaintiffs contain a one-year limitations period for enforcement of contract provisions and that "an unlicensed contractor can[] rely on the terms of its contract in defending an action brought by a customer." [Dkt. No. 24] at 18. For this reason, defendants argue that plaintiffs' claims accrued more than one year before this lawsuit was filed on December 6, 2023, and, as such, must be dismissed as time-barred. Id. In opposition, plaintiffs argue that Virginia Code § 54.1-1115(C) prevents defendants from enforcing the limitations period in their unlawful contracts. [Dkt. No. 30] at 11.

Defendants' argument that the Court should apply the contractual one-year limitations provision to plaintiffs' claims is meritless because as previously discussed, under Va. Code

§ 54.1-1115(C), an unlicensed contractor cannot enforce a construction contract it enters into "unless the unlicensed contractor (i) gives substantial performance within the terms of the contract in good faith and (ii) did not have actual knowledge that a license or certificate was required by this chapter to perform the work for which he seeks to recover payment." Here, the parties agree that the safe harbor provision in § 54.1-1115(C) does not apply, and as such, defendants may not independently seek to enforce the sale agreements. Defendants instead argue that § 54.1-1115(C) does not preclude them from using the language in the sale agreements as a defense to litigation. Defendants do not provide any persuasive basis to support their claim that an unlicensed contractor may defend against an allegation of fraud by relying on language in an unenforceable agreement.[7] Accordingly, because a "construction contract formed by an unlicensed contractor is generally void and unenforceable in Virginia," Sarkissian Interiors, Inc. v. Zeitoun, 2022 WL 743949, at *4 (D. Md. Mar. 11, 2022), and because "deny[ing] relief to [plaintiffs] who ha[ve] entered into a contract with an unlicensed contractor will not further the purposes of the statute but will benefit the primary wrongdoer," Enlow & Son, Inc. v. Higgerson, 201 Va. 780, 787 (1960), the limitations period in the sale agreements are inapplicable.

### 2. Virginia's Statute of Limitations

Defendants argue that even if the sale agreements' one-year limitations period is unenforceable, plaintiffs' claims are time-barred under Virginia law. [Dkt. No. 24] at 20. In opposition, plaintiffs contend that their claims are not time-barred, and even if they were, the

---

[7] Although defendants cite to Montoya Const. v. Kirkland Constr., 2007 Va. Cir. LEXIS 333 (2007), and Blastos v. Pulte Home Corp., 38 Va. Cir. 269, 270 (1995), to argue that § 54.1-1115(C) does not preclude defendants from using language in an agreement as a defense to litigation, both of those cases are unpersuasive given that they apply a pre-amendment version of § 54.1-1115(C), which merely disallowed lawsuits brought by unlicensed contractors. See Former Va. Code § 54.1-1115(C) (enacted March 16, 2003 through March 30, 2018).

doctrines of fraudulent concealment and unconscionability prohibit defendants from enforcing a limitations period to defeat plaintiffs' claims. [Dkt. No. 30] at 16. Because Virginia's statute of limitations differs depending upon the claim being brought, each of the claims in the Amended Complaint will be addressed in turn.

The Knaacks and Chipparis' individual breach of contract and breach of warranty claims under Count VI are not time-barred. Breach of contract and breach of warranty actions based upon a written contract are subject to a five-year statute of limitations period from when the action "shall have accrued." See Va. Code § 8.01-246(2). Such an action "accrues" when the breach of contract or warranty occurs. Va. Code § 8.01-230 (explaining that "in every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property"). Virginia law further provides that "if any action is commenced within the prescribed limitation period and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought." Va. Code § 8.01-229(E)(1). Both parties agree that, in the case of a contract for new home construction, a breach of contract by the builder can occur no earlier than the closing date.

The Chipparis closed on their home on May 9, 2018, see [Dkt. No. 14] at ¶ 140, and the Knaacks closed on their home on June 30, 2020, see id. at ¶ 164. The initial complaint in this action was filed on December 6, 2023. Accordingly, the Knaacks claims for breach of contract and warranty fall squarely within the five-year limitations period. The Chipparis' claims, although filed more than five years after their closing date, are nevertheless timely because the limitation period was tolled during the eight-plus months of litigation involving the Chipparis'

claims in Wilson, which began on February 28, 2022 and ended on November 18, 2022. See Va. Code § 8.01-229(E). Accordingly, plaintiffs' claims in Count VI are timely.

Plaintiffs' claims in Count VII for negligent repair are similarly not time-barred. Property damage claims are subject to a five-year statute of limitations. See Va. Code § 8.01-230. Both the Chipparis' and the Knaacks' claims for negligent repair accrued when the property was purportedly defectively repaired in 2021 and 2022. See id. Because the alleged damage caused by defendants' negligent repairs occurred less than five years before plaintiffs brought this action, see [Dkt. No. 14] at ¶¶ 139–177, the individual claims in Count VII are timely.

On the other hand, plaintiffs' claims regarding the violation of the VCPA (Count V), and for declaratory and equitable relief (Counts I, II, III, and IV) are time-barred. A VCPA cause of action must be commenced within two years of its accrual, see Va. Code § 59.1-204.1; declaratory judgment actions are subject to the same limitation period as the underlying object of the litigation, see Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 266 Va. 455, 465 (2003); and equitable claims are a "species of fraud[] that [are] actionable at law, . . . equity follows the law and will apply such statute of limitations as may exist," CSX Transportation, Inc. v. Norfolk S. Ry. Co., 2023 WL 7273736, at *5 (E.D. Va. Apr. 19, 2023). Although plaintiffs argue that their VCPA, declaratory judgment, and equitable claims accrued in 2022 because they are "based upon . . . fraud," and fraud claims accrue at the time of "discovery" of the fraud, [Dkt. No. 30] at 20, Virginia precedent relied upon by both parties instructs that a cause of action for fraud begins "when the fraud is, or upon reasonable inquiry and due diligence should have been discovered." See Sun Hotel, Inc. v. Summitbridge Credit Invs. III, LLC, 86 Va. Cir. 189, 192 (2013).

15

Here, plaintiffs cannot deny that they were on notice as of the date they signed their sale agreements about a potential issue with the licensure status of their seller entity. In their affidavits attached to their opposition to the Motion to Dismiss, the Chipparis and Knaacks claim that they believed that the Class A license belonged to the signing entity, Brookfield Washington, because the license number was listed right after the signature line for Brookfield Washington, [Dkt. Nos. 30-1, 30-2]; however, ¶ 23 of each of their sale agreements states that "Brookfield Residential" is a licensed Class A contractor, and defines "Brookfield Residential" as Brookfield Washington, LLC <u>and</u> Brookfield Management Washington, LLC collectively. This statement, coupled with the sale agreements listing the builder as Brookfield Management—an entity which did have the appropriate Class A license—placed the plaintiffs on inquiry notice as to a potential issue with respect to the licensure status of those entities. Any of the plaintiffs could have inquired into defendants' licensure by asking defendants' staff to clarify Brookfield Washington's licensure status or by visiting the Virginia Department of Professional Occupational Regulation website, which would have revealed the licensure status of the defendants. <u>See</u> [Dkt. No. 24] Sub-Exhibit A (printouts from DPOR website search).[8] Accordingly, because the alleged wrongdoing occurred when the plaintiffs entered into their respective sale agreements, Counts I, II, III, IV, and V are time-barred.[9]

---

[8] Plaintiffs also argue that the doctrines of fraudulent concealment and unconscionability prohibit defendants from enforcing limitations terms to defeat plaintiffs' claims; however, there is nothing in either the Amended Complaint or the affidavits attached to plaintiffs' opposition that can support any claim that defendants engaged in "some trick or artifice" to "prevent[] inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence." <u>See</u> <u>John Driggs Co. v. Commonwealth</u>, 7 Va. Cir. 53, 55 (1981).

[9] Even if these claims were not time-barred, they nevertheless fail. Plaintiffs' declaratory and equitable relief claims (Counts I, II, III, and IV) only seek remedies and cannot remain as standalone counts, especially where plaintiffs have adequate remedies available at law, <u>see</u> <u>Wenzel v. Knight</u>, 2015 WL 3466863, at *1 (E.D. Va. June 1, 2015) (declining "to exercise its declaratory judgment jurisdiction over a claim that simply duplicates the breach of contract

## C. <u>Source of Duty Rule (Count VII)</u>

Defendants' final argument is that the negligent repair claims in Count VII fail as a matter of law due to the source of duty rule followed in Virginia.  [Dkt. No. 24] at 32.  In opposition, plaintiffs argue that negligent repair claims against a builder are allowed in Virginia and do not violate the source of duty rule, even if the plaintiff separately brings a breach of contract action against the same builder.  [Dkt. No. 30] at 30.

As an initial matter, tort liability for negligent repair "cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway—and thus, as the maxim restates, 'in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'"  <u>Tingler v. Graystone Homes, Inc.</u>, 298 Va. 63, 82 (2019) (citing <u>MCR Red., LLC v. JB&A, Inc.</u>, 294 Va. 446 (2017)); <u>see</u> <u>Dur. v. A. Branch Diesel</u>, 240 F. App'x 568, 572-73 (4th Cir. 2007) ("[T]he law of contracts provides plaintiff the sole remedy" because the defendant did not owe any duty to the plaintiff beyond those undertakings by contract).  Simply put, failure to allege sufficient facts of an independent obligation supporting a tort claim is grounds for dismissal.  <u>Princeton Woods, LLC v. PNC Bank</u>, 2009 WL 3614983, at *8 (E.D. Va. Oct. 28, 2009) (dismissal for failure to allege an "independent common law duty supporting the tort claims").

---

claim"); <u>Williams v. Branch Banking & Trust Co.</u>, 2017 WL 2999973, at *1 (E.D. Va. Mar. 8, 2017) ("Under Virginia law, equitable remedies are not available if a plaintiff has an adequate remedy at law.").  Moreover, plaintiffs' VCPA claim (Count V) fails because the Amended Complaint does not allege facts supporting that plaintiffs' damages were the specific result of the defendant entity's lack of licensure, and where a plaintiff's alleged damages "arose from the way that the contract was performed by [the defendant], not by his misrepresentation as to his license status," a VCPA claim cannot stand.  <u>Mock v. Bozcar</u>, 64 Va. Cir. 260, 261-62 (2004).

Here, the Amended Complaint merely alleges in a conclusory fashion that defendants had "a common law duty to take due care for the safety of the person and property of others to not create an unreasonably dangerous condition in the performance of repairs of the Homes," [Dkt. No. 14] at ¶ 236; however, the negligent repair claims arise solely out of the contractual relationship between the parties, either through the sales agreements or the limited warranties. The Amended Complaint's conclusory statement is insufficient to allege an "independent common law duty supporting" plaintiffs' negligent repair claim. See Princeton Woods, LLC, 2009 WL 3614983, at *8.

Although plaintiffs cite to Tingler v. Graystone Homes, Inc., to argue that both breach of contract and negligent repair claims against a defendant builder may proceed, any reliance on Tingler is unconvincing. In that case, the court distinguished between actions which constitute nonfeasance (i.e., failure to perform, properly or otherwise, a contractual obligations) and those which constitute misfeasance (i.e., a positive act of negligence going outside the scope of those obligations, such as using dangerous chemicals during repairs which were not necessary to use), the court finding that only the latter could potentially allow tort recovery even where a contract exists. 298 Va. at 83–84. The Amended Complaint does not allege any such misfeasance. Instead, it alleges only failures to perform contractual obligations—namely, failure to repair plaintiffs' homes adequately. Id. at 84 (explaining that "there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made"). Accordingly, because any recourse owed to the plaintiffs sounds in contract and not in tort, Count VII will be dismissed.

III

For these reasons, and by an Order to be issued with this Memorandum Opinion, defendants' Motion to Dismiss [Dkt. No. 23] will be granted as to all counts, except for Count VI, which will go forward; defendants' Motion for Sanctions [Dkt. No. 32] will be denied; and plaintiffs' Motion for Leave to File Sur-Reply to the Motion for Sanctions [Dkt. No. 39] will be denied as moot.

Entered this 25 day of June, 2024.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge